**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTONIO S. HINOJOS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>KOHL'S CORPORATION, a Wisconsin corporation; KOHL'S DEPARTMENT STORES, INC., a Delaware corporation,<br><br>*Defendants-Appellees*. | No. 11-55793<br><br>D.C. No.<br>2:10-cv-07590-ODW-AGR<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
January 10, 2013—Pasadena, California

Filed May 21, 2013

Before: Stephen Reinhardt, Kim McLane Wardlaw,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Reinhardt;
Concurrence by Judge Wardlaw

## SUMMARY[*]

### California Law / Standing

The panel reversed the district court's dismissal of claims under California's Unfair Competition Law, Fair Advertising Law, and Consumer Legal Remedies Act brought by a plaintiff in a putative class action against Kohl's Department Stores alleging false advertising.

The panel applied the California Supreme Court's holding in *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011), and held that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the Unfair Competition Law and Fair Advertising Law because he has suffered an economic injury. The panel also reversed the district court's dismissal of plaintiff's Consumer Legal Remedies Act claims. Finally, the panel denied defendant's motion to certify the issues to the California Supreme Court both on the merits and because of the circumstances attendant to its filing (where defendant only requested certification for the first time after oral argument).

Judge Wardlaw concurred in the majority opinion, except that she concurred only as to the result in Part III, which denied Kohl's request to certify the state law standing requirements for review by the California Supreme Court. Judge Wardlaw would simply deny the request as untimely.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew J. Zevin (argued), Stanley • Iola, LLP, and Derek J. Emge, Emge & Assoc., San Diego, California, for Plaintiffs-Appellants.

James F. Speyer (argued), Arnold & Porter LLP, Los Angeles, California, for Defendants-Appellees.

**OPINION**

REINHARDT, Circuit Judge:

Most consumers have, at some point, purchased merchandise that was marketed as being "on sale" because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher "original" price in order to induce customers to purchase merchandise at a purportedly marked-down "sale" price. Because such practices are misleading—and effective—the California legislature has prohibited them.

The Plaintiff here, Antonio Hinojos, alleges that he was a victim of such a practice and bought merchandise from a Kohl's Department Store that he would not have purchased had he not been misled by advertisements stating that the merchandise was marked down from a fictitious "original" or "regular" price. The only question before us on this appeal is whether Hinojos alleges that he "lost money or property" and, therefore, has statutory standing under California law to sue Kohl's to enforce California's prohibition on this deceptive

marketing practice. Kohl's argues, and the district court agreed, that Hinojos lost neither money nor property because he acquired the merchandise he wanted at the price that was advertised, even if the advertised price was falsely represented as a "sale." Because the California Supreme Court has previously rejected a similar argument, holding that a consumer has "lost money or property" so long as false advertisements induced him to buy a product he would not have purchased or to spend more than he otherwise would have spent, we reverse. For similar reasons, we also reverse the district court's dismissal of Hinojos's nearly identical claims under California's Consumer Legal Remedies Act.

## FACTUAL BACKGROUND

Kohl's Corporation and its wholly owned subsidiary Kohl's Department Stores, Inc. (collectively, "Kohl's" or "the Defendants"), are retailers that operate a chain of general department stores selling clothing, footwear, home products and accessories. Hinojos purchased several items of apparel and luggage at a Kohl's department store. Hinojos alleges that he relied upon deceptive advertisements in deciding to purchase these items from Kohl's. Specifically, he alleges that he purchased several items[1] that were advertised as being substantially reduced from their "original" or "regular" prices but that were, in reality, routinely sold by Kohl's at the

---

[1]  Specifically, Hinojos purchased Samsonite luggage that was advertised as 50% off its "original" price of $299.99, Chaps Solid Pique polo shirts that were marked down 39% from their "original" price of $36.00, Chaps Solid Pique polo shirts that were marked down 32% from their "original" price of $39.50, Chaps t-shirts that were marked down 40% from their "original" price of $26.00, and Sonoma Life & Style Henley Tops that were marked down 40% from their "original" price of $22.00.

advertised "sale" prices rather than the purported "original" or "regular" prices. Hinojos further alleges that the advertised "original" or "regular" prices did not reflect prevailing retail market prices during the three months immediately preceding the publication of the advertisements in question. Finally, Hinojos alleges that he "would not have purchased [these] products at Kohl's in the absence of Kohl's misrepresentations."

## PROCEDURAL BACKGROUND

Hinojos filed a putative class action complaint in California Superior Court asserting causes of action under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; Fair Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et seq.* Kohl's removed the action to the federal district court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2). On December 1, 2010, the district court dismissed Hinojos's UCL and FAL claims, determining that Hinojos did not have standing under the UCL or the FAL, which require a plaintiff to have "lost money or property" as a result of the defendant's false advertising in order bring a claim, because Hinojos had acquired the merchandise he wanted at the price advertised.

Shortly thereafter, the California Supreme Court published its opinion in *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011), which held that the purchasers of goods falsely labeled "made in U.S.A." had standing under the UCL and FAL when the purchasers alleged that the false labeling induced them to purchase the goods and they would not have purchased them otherwise. Hinojos filed a motion

for reconsideration based on *Kwikset*, which the district court denied after concluding that *Kwikset* applied only to false advertisements regarding a product's "composition, effects, origin, and substance."

On April 25, 2010, the district court granted the Defendants' FRCP 12(c) motion for judgment on the pleadings and dismissed Hinojos's only remaining claim, i.e., his CLRA claim. The district court concluded that Hinojos did not have standing under the CLRA because he was unable to show he suffered "any damage" as a result of Kohl's false advertising. Hinojos timely appealed the dismissal of his UCL, FAL, and CLRA claims.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this putative class action under 28 U.S.C. § 1332(d)(2) because Hinojos is a citizen of California, the Defendants are citizens of another state and the amount in controversy exceeds $5,000,000. We have jurisdiction under 28 U.S.C. § 1291.

We review *de novo* the district court's dismissal of Hinojos's claims. *See Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005) (holding that a district court's grant of both FRCP 12(b) and 12(c) motions are reviewed *de novo*). As a federal court sitting in diversity, we "must apply the substantive law of California, as interpreted by the California Supreme Court," *Karen Kane Inc. v. Reliance Ins. Co.*, 202 F.3d 1180, 1183 (9th Cir. 2000), even if that law changes after judgment is entered below. *See Nelson v. Brunswick Corp.*, 503 F.2d 376, 381 (9th Cir. 1974).

**ANALYSIS**

**I**

The UCL is a broad California statute that prohibits business practices that constitute "unfair competition," which is defined as

> any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

Cal. Bus. & Prof. Code § 17200. The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition. The FAL, in turn, provides in relevant part:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. Thus, the FAL expressly prohibits the type of false advertising that Kohl's allegedly

engaged in and the UCL provides individual consumers with a cause of action to enforce that prohibition.**[2]**

In 2004, however, the voters of California passed Proposition 64, which restricts standing for individuals alleging UCL and FAL claims to persons who "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (materially identical standard under the FAL); *see Kwikset*, 246 P.3d at 884 (holding that the UCL and FAL standing requirements are identical). The California Supreme Court has held that the purpose of Proposition 64 was to "curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the defendant." *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1086–87 (Cal. 2010) (internal quotation marks omitted). However, Proposition 64 "just as plainly preserved standing for those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." *Id.* at 1087.

The "lost money or property" requirement therefore requires a plaintiff to demonstrate "some form of economic injury" as a result of his transactions with the defendant, *Kwikset*, 246 P.3d at 885, although "the quantum of lost money or property necessary to show standing is only so

---

**[2]** The UCL is designed to function this way. It "borrows violations from other laws by making them independently actionable as unfair competitive practices" although "a practice may be deemed unfair even if not specifically proscribed by some other law." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (quotation marks and citations omitted).

much as would suffice to establish [Article III] injury in fact," *id.* at 886.[3]  There are "innumerable ways" that a consumer can show economic injury from unfair competition.[4]  *Id.* at 885.

The *Kwikset* Court explained precisely what a plaintiff must allege when he wishes to satisfy the economic injury requirement in a case involving false advertising: "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Id.* at 890.  *Kwikset* also explained why such allegations are sufficient to establish economic injury within the meaning of Proposition 64:

> From the original purchasing decision we know the consumer valued the product as

---

[3]  There is no difficulty in this case regarding Article III injury in fact, and neither party suggests otherwise.  We have explained that when, as here, "Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so" they have suffered an Article III injury in fact.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012).  The only issue before us, therefore, is whether this "injury in fact" is an economic injury sufficient for purposes of statutory standing under the UCL and FAL.

[4]  At the pleading stage, of course, allegations of economic injury suffice.  *Id.* at 888–89 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992)).

labeled more than the money he or she parted
with; from the complaint's allegations we
know the consumer valued the money he or
she parted with more than the product as it
actually is; and from the combination we
know that because of the misrepresentation
the consumer (allegedly) was made to part
with more money than he or she otherwise
would have been willing to expend, i.e., that
the consumer paid more than he or she
actually valued the product. That increment,
the extra money paid, is economic injury and
affords the consumer standing to sue.[5]

*Id.* at 890–91.

Hinojos has done everything *Kwikset* requires to allege an
economic injury under the UCL and FAL. He alleges that the
advertised discounts conveyed false information about the
goods he purchased, i.e., that the goods he purchased sold at
a substantially higher price at Kohl's in the recent past and/or
in the prevailing market. He also alleges that he would not
have purchased the goods in question absent this
misrepresentation. This is sufficient under *Kwikset.*

Kohl's attempts to distinguish *Kwikset* on the ground that
Hinojos's complaint does not state at what price (if any) he

---

[5] Pleading that one would not have otherwise purchased the product but
for the misleading advertising also satisfies the consumer's obligation to
plead a causal link between the advertising and the alleged economic
injury. *Id.* at 890. Therefore, as a practical matter, in cases such as these,
Proposition 64's causation requirement (which is not at issue in this
appeal) and the economic injury requirement are coextensive.

would have purchased the merchandise in question had its "original" or "regular" price not been misrepresented. There is no requirement, however, that Hinojos separately plead how much he would have paid for the merchandise had he known its true market value. *Kwikset* explicitly rejected that argument. *Id.* at 891 n.15 ("Because the issue here is only the threshold matter of standing, not whether and how much to award in restitution, a specific measure of the amount of [the alleged] loss is not required."); *see id.* at 894–95.[6]

In denying Hinojos's motion for reconsideration, the district court limited *Kwikset* on the alternative ground that it addresses UCL and FAL standing only in cases involving "factual misrepresentations about the composition, effects, origin, and substance of advertised products." Kohl's advances a similar argument in slightly different form when it argues that *Kwikset* does not apply because there was "no difference in value between the product 'as labeled' and the product 'as it actually is,' because the products . . . are one and the same." In other words, according to Kohl's and the

---

[6] We note, however, that *Kwikset* explained that the difference between what a plaintiff actually paid and what he would have paid had the product been truthfully advertised represents the appropriate measure of restitution to which Hinojos may be entitled under the UCL. *Id.* Therefore, even though it need not be pled in order to afford him standing, the price that Hinojos would have otherwise paid, if any, will certainly be relevant to the calculation of restitution, assuming Hinojos is able to prove his false advertising allegations. *See Korea Supply Co.*, 63 P.3d at 946–47 (reiterating that disgorgement is only available under the UCL for damages actually suffered by the plaintiff). In any event, Hinojos need not be able to prove the quantum of damages he suffered in order to be entitled to injunctive relief given that he alleges sufficient facts to prove that he suffered *some* economic injury. *See Kwikset*, 246 P.3d at 894–95 (noting that a UCL plaintiff may obtain an injunction even when he cannot prove his entitlement to restitution).

district court, when a merchant misrepresents the "regular" price of his wares, it does not misrepresent the innate value of those wares so the misled consumer has suffered no economic injury; he gets the product he expected at the price he expected.

*Kwikset* cannot be so easily limited. It is true that *Kwikset* itself involved misrepresentations regarding how the merchandise in question was produced; the defendant in *Kwikset* was a manufacturer of locksets, which it falsely labeled as having been "Made in [the] U.S.A." It is also true that *Kwikset* described a number of other examples of misrepresentations concerning a product's origin or composition that would be actionable under the UCL and FAL: meat falsely labeled as kosher or halal, wine labeled with the wrong region or year, blood diamonds mislabeled as conflict-free, and goods falsely suggesting they were produced by union labor. *Kwikset*, 216 P.3d at 889–90. Nothing in *Kwikset*, however, suggests that these examples were intended to be exhaustive instead of illustrative. To the contrary, these examples were offered to explain why the particular misrepresentation at issue in *Kwikset*, which *did* involve how the product was manufactured, was significant. That is why they were introduced in a paragraph beginning with the sentence: "To some consumers, processes and places of origin matter." *Id.* at 889.

The district court's "composition, effects, origin, and substance" test ignores the fact that, to other consumers, a product's "regular" or "original" price matters; it provides important information about the product's worth and the prestige that ownership of that product conveys. *See* Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. of Pub. Pol'y &

Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."); *id.* at 56 ("[E]mpirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases.").[7] Misinformation about a product's "normal" price is, therefore, significant to many consumers in the same way as a false product label would be. *See Kwikset*, 246 P.3d at 890 (recognizing that falsely labeling a watch as a Rolex would be an actionable misrepresentation even if the watch was a "functional[] equivalent" of a Rolex). That, of course, is *why* retailers like Kohl's have an incentive to advertise false "sales." It is also why the California legislature has prohibited them from doing so. In fact, the deceived bargain hunter suffers a more obvious economic injury as a result of false advertising than the *Kwikset* consumer who was duped into buying foreign-made goods, because the bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore has a higher resale value.

The district court's test would also eliminate consumers' ability to bring UCL and FAL claims for a vast array of other

---

[7] We see no merit to the Defendants' objection that we may not rely on articles from a marketing journal at the motion to dismiss stage. We do not rely on the cited article to establish facts about Hinojos's case that are not contained in the pleadings, but rather in support of the conclusion that false advertisements about a product's true market price are significant to consumers. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1200–01 (9th Cir. 2010) (referring, at the motion to dismiss stage, to published empirical research about consumer behavior to determine whether an advertisement was potentially misleading).

misleading marketing practices that have little or nothing to do with a product's "composition, effects, origin, and substance." For example, none of the following advertisements deal with the "composition, effect, origin, and substance" of the product: "not available in stores," "available for a limited time only," "the same model of shoe worn by LeBron James," "50% of customers who purchased product X also purchased our product," and "more doctors recommend our product than any other brand." Yet all of these examples represent effective marketing techniques that, if false, can be used to deceive consumers into making purchases they would not otherwise make. *Kwikset* gives no indication that Proposition 64 meant to silently close the door on consumers' ability to bring UCL and FAL claims based on such false advertising.

To the contrary, *Kwikset* emphasized that Proposition 64 was enacted *not* to eliminate individual consumer suits when the consumer was actually deceived by a misleading advertisement, but rather to stop "fishing expeditions" by consumers and attorneys who may have never even intended to purchase a product that was being falsely advertised. *Kwikset*, 246 P.3d at 884; *see also id.* at 894. If Proposition 64 were interpreted to require more than that a consumer have purchased a product that he would not have purchased absent the misleading advertisement, then it "would bring to an end private consumer enforcement of bans on many label misrepresentations, contrary to [its] apparent intent . . . ." *Id.* at 891. This is precisely what would happen to private consumer enforcement of California's prohibition on advertising false "sales," Cal. Bus. & Prof. Code § 17501, under the district court's approach.

The district court alternatively described its holding as stemming from the fact that Hinojos got the "benefit of the bargain" because he kept the goods that he purchased and they were not defective.   This "benefit of the bargain" rationale was explicitly rejected in *Kwikset*.   246 P.3d at 892–93.   *Kwikset* held that the "benefit of the bargain" defense is permissible only if the misrepresentation that the consumer alleges was not "material."   A representation is "material," however, if a reasonable consumer would attach importance to it *or* if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action."[8]   *Id.* at 892 (quoting Restatement (Second) of Torts, § 538, subd. (2)(b) (1977)).   Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a "material" misrepresentation, and courts must defer to that determination.   *See id.*   Here, Hinojos specifically and plausibly alleges that Kohl's falsely markets its products at reduced prices precisely because consumers such as himself reasonably regard price reductions as material information when making purchasing decisions. Furthermore, both state and federal law specifically prohibit retailers from advertising false "sales."   *See* Cal. Bus. & Prof. Code § 17501 (FAL); Cal. Civil Code § 1770(a)(13) (CLRA); 16 C.F.R. § 233.1(a) (Federal Trade Commission regulations).   Therefore, the district court's determination that Hinojos has suffered no economic injury because he received the "benefit of the bargain" is contrary to *Kwikset* because

---

[8]   Furthermore, the materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided at the motion to dismiss stage.   *See In re Steroid Hormone Product Cases*, 104 Cal. Rptr. 3d 329, 338–39 (Cal. Ct. App. 2010).

Hinojos alleges that Kohl's made material misrepresentations that induced him to buy products he would not otherwise have purchased.

In sum, price advertisements matter. Applying *Kwikset* in a straightforward manner, we hold that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.

## II

The CLRA provides a second, overlapping prohibition on advertising non-existent sales. Specifically, it forbids "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civil Code § 1770(a)(13). In turn, Cal. Civil Code § 1780(a) provides a cause of action to "[a]ny consumer who suffers *any damage* as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civil Code § 1780(a) (emphasis added). The district court's conclusion that Hinojos failed to establish standing under the CLRA because he did not suffer "any damage" is erroneous for the same reasons that its determinations regarding UCL and FAL standing were wrong.

In *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299, 302–03 (Cal. 2009), the California Supreme Court made clear that the CLRA's "any damage" requirement is a capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a

consumer is misled by deceptive marketing practices. Because the "any damage" standard includes even minor pecuniary damage, we conclude that any plaintiff who has standing under the UCL's and FAL's "lost money or property" requirement will, *a fortiori*, have suffered "any damage" for purposes of establishing CLRA standing. *See, e.g.*, *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 320 (Cal. Ct. App. 2012) (noting that where a plaintiff alleged an "economic injury" under the UCL he also adequately alleged injury under the CLRA); *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. 2011) (unpublished) (same). Accordingly, Hinojos adequately alleges that he suffered "any damage" for purposes of the CLRA. We therefore reverse and hold that Hinojos adequately alleges an injury under the CLRA.

## III

Finally, because *Kwikset* provides more than sufficient guidance with regard to the state-law statutory standing questions presented in this case, we deny the Defendants' motion to certify this matter to the California Supreme Court. Although we deny the motion on its merits, an additional comment is required in light of the circumstances under which the motion was made.

Kohl's removed this lawsuit to federal court, denying Hinojos the state forum in which he sought to have his case heard. Although *Kwikset* was discussed extensively in the parties' appellate briefs, Kohl's did not suggest that certification was necessary, or appropriate, either in its answering brief or at oral argument. More important, any objective witness to the oral argument would have concluded that the chances that Kohl's would prevail on the merits were

slim at best.  Then, a month and a day after oral argument, Kohl's filed a motion to certify, suggesting for the first time that certification would be appropriate and strongly urging that we certify this case to the California Supreme Court rather than decide it.  The motion to certify did not rely on any intervening authority or on any case decided after Kohl's filed its appellate brief, nor did it make any new substantive arguments.  Furthermore, Kohl's offered no reason for failing to mention certification prior to or during oral argument or for urging certification only after we expressed profound skepticism at oral argument regarding the merits of its position.

We have long looked with disfavor upon motions to certify that are filed after the moving party has failed to avail itself of a prior opportunity to seek certification.  *See, e.g.*, *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008).  For example, in states that accept certification from federal district courts (unlike California), we have a held that there is a "presumption against certifying a question to a state supreme court after the federal district court has issued a decision" when the party that lost below did not mention the possibility of certification until after the district court entered summary judgment against it.  Such requests for certification are generally inappropriate, we have held, because "[a] party should not be allowed 'a second chance at victory' through certification."  *Id.* (quoting *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984)).

Here, Kohl's had an opportunity to suggest certification in its pre-argument brief or even at oral argument.  It could have urged that, in the event that this court was not persuaded that California law clearly favored its position, the appropriate course of action would be certification to the

California Supreme Court. Yet it chose at that point not to urge certification as an alternate course of action, presumably for tactical reasons—possibly because having prevailed below it greatly preferred to have the case decided by a federal court. Only after (correctly) perceiving at oral argument that we were not inclined to rule in its favor on the merits did Kohl's file its motion for certification. For reasons similar to those expressed in *Thompson*, we strongly disfavor a party that prevailed below requesting certification for the first time after it becomes apparent at oral argument that it is not likely to prevail in federal court.

Our court has also developed rules to ensure that a party may not manipulate the appellate system by seeking to avoid a panel it views as unlikely to accept its legal position. It is for that reason that we do not make panels public until the first working day of the week preceding oral argument and permit motions for continuances after the panel has been announced only "under exceptional circumstances." *See* General Order 3.5. Here, Kohl's urged certification for the first time only after it had the opportunity *both* to learn which members of this court would hear its appeal *and* to assess those judges' actual views of its case, based upon the concerns the judges expressed at oral argument. Having gained that knowledge, Kohl's sought to send this case back to state court whence it came, in light of its perception that the federal court was unlikely to rule in its favor. Kohl's conduct regarding certification violated both our rule against belated certification requests and our long-standing prohibition against a party's use of procedural motions to avoid having its appeal decided by a panel it perceives as unfavorable. Moreover, here Kohl's request would not only affect the operation of the federal court, but would

unnecessarily embroil the Supreme Court of the State of California in Kohl's attempt to find a more favorable forum.

## CONCLUSION

In *Kwikset*, the California Supreme Court held that all a consumer need allege to establish standing to bring a UCL or FAL claim is that (1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise. We reject the Defendants' argument that *Kwikset* is distinguishable because it involved a different type of unlawful misrepresentation than the one at issue here. We therefore reverse the district court's dismissal of Hinojos's UCL and FAL claims. For nearly identical reasons, we also reverse the district court's dismissal of Hinojos's CLRA claims. We also deny the Defendant's motion to certify both on the merits and because of the circumstances attendant to its filing.

**REVERSED and REMANDED; Motion to Certify DENIED.**

WARDLAW, Circuit Judge, concurring in part and concurring in the result:

I am pleased to concur in the majority opinion, except that I concur only as to the result of Part III, which denies Kohl's' request to certify the state law standing requirements for review by the California Supreme Court. Although I agree that Kohl's' first removing the action from state to federal court, and then seeking to have the matter on appeal certified

to the state court, raises suspicion as to Kohl's' motivations, on this record and without providing an opportunity to Kohl's to respond, it is somewhat unfair to conclude that Kohl's had only a nefarious motive. I would simply deny the request as untimely.