**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHAWNNA MONTES, on behalf of herself and all others similarly situated, | No. 23-35496 |
| | D.C. No. 2:22-cv-00201-TOR |
| *Plaintiff-Appellant*, | |
| v. | ORDER CERTIFYING QUESTION TO THE WASHINGTON SUPREME COURT |
| SPARC GROUP, LLC, | |
| *Defendant-Appellee*. | |

Filed May 9, 2025

Before: Sidney R. Thomas, Kim McLane Wardlaw, and Daniel P. Collins, Circuit Judges.

Order;
Concurrence by Judge Collins

# SUMMARY[*]

## Washington's Consumer Protection Act

In an action involving the scope of injury protected by Washington's Consumer Protection Act, the panel certified the following question to the Washington Supreme Court:

> When a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an "injur[y] in his or her business or property" under Wash. Rev. Code §§ 19.86.020 and 19.86.090 if the consumer pays the advertised price?

Pertinent to this certification order, plaintiff Shawnna Montes filed a putative class action alleging that Aéropostale, a clothing brand operated by Defendant SPARC Group, LLC, violated the CPA by representing to consumers that clothing items for sale were at deeply discounted prices when in fact they had not been discounted at all, i.e., a "false discounting scheme."

Montes alleged three theories of injury. First under the "purchase price theory," she alleged she was injured because but for the deceptive discount advertising she would not have purchased the leggings at the price that she paid.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Second, under the "benefit of the bargain theory," she alleged that she was injured because she did not receive the discount that she thought she was getting. Finally, under the "price premium theory," she argues that the false discounting scheme raised the cost of Aéropostale's clothes for all consumers, and therefore she purchased the leggings at an inflated price.

The panel identified that the basis of the certification order was whether Washington law protects consumers from false discounting schemes, and if it does, whether Montes has adequately alleged an injury under Washington's CPA by alleging that she would not have paid the price that she did for a pair of leggings but for misrepresentations about the leggings' discount and price history.

Concurring in the result, Judge Collins agreed with the decision to certify to the Washington Supreme Court the question set forth in the majority's order. However, he did not join the majority's reasoning to the extent that it suggested that plaintiff's "purchase price theory" relied on the premise that the available purchase price changed due to the alleged misrepresentation and would have been lower in the absence of it. As set forth in her opening brief, plaintiff's "purchase price theory" focused on misrepresentations that induce customers to make purchases that they otherwise would not have made—with the injury being the money spent on those purchases. Thus, the asserted injury and measure of damages was the full purchase price, with no reduction for the value received. Judge Collins also wrote that the majority provided an irrelevant summary of cherry-picked decisions addressing California and Oregon law, as well as non-precedential decisions from federal district courts in Washington that were not binding either on this court or on the Washington Supreme Court.

## COUNSEL

Che Corrington (argued), Paul K. Lukacs, and Daniel M. Hattis, Hattis & Lukacs, Bellevue, Washington; Stephen P. DeNittis, DeNittis Osefchen PC, Marlton, New Jersey; for Plaintiff-Appellant.

Michael D. Meuti (argued), Meegan B. Brooks, and Stephanie A. Sheridan, Benesch Friedlander Coplan & Aronoff LLP, San Francisco, California; David R. Ebel and Molly J. Henry, Schwabe Williamson & Wyatt PC, Seattle, Washington; for Defendant-Appellee.

## ORDER

We respectfully ask the Washington Supreme Court to answer the certified question presented below, pursuant to Wash. Rev. Code § 2.60.020, because "it is necessary to ascertain the local law of [Washington] state in order to dispose of [this] proceeding and the local law has not been clearly determined." This case involves the scope of injury protected by Washington's Consumer Protection Act ("CPA").

Pertinent to this certification order, Plaintiff Shawnna Montes alleges that Aéropostale, a clothing brand operated by Defendant SPARC Group, LLC, violated the CPA by representing to consumers that clothing items for sale were at deeply discounted prices when in fact they had not been discounted at all, i.e., a "false discounting scheme." The sole issue is whether Montes has alleged an injury under the

CPA.[1]  We determine that this issue is dispositive and has not been settled by Washington case law.  Thus, we respectfully certify the following question to the Washington Supreme Court:

> When a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an "injur[y] in his or her business or property" under Wash. Rev. Code §§ 19.86.020 and 19.86.090 if the consumer pays the advertised price?[2]

## I.

We summarize the material allegations from Montes's complaint, which we take as true for purposes of this appeal. *See Wadsworth v. Talmage*, 911 F.3d 994, 995 (9th Cir.

---

[1] At the district court, Defendant SPARC Group conceded that the deceptive acts and causation elements of the CPA were met, therefore injury is the only disputed issue.

[2] Montes alleges three theories of injury.  First, she alleges that she was injured because but for the deceptive discount advertising she would not have purchased the leggings at the price that she paid, the "purchase price theory."  Second, she alleges that she was injured because she did not receive the discount that she thought she was getting, the "benefit of the bargain" theory.  Finally, Montes argues that the false discounting scheme raised the cost of Aéropostale's clothes for all consumers, and therefore she purchased the leggings at an inflated price, the "price premium theory."  We set forth all of Montes's theories of injury so that the Washington Supreme Court may discuss the viability of these theories under Washington law in the false discounting context to the extent it sees fit.

2018). Montes filed a putative class action against Defendant SPARC Group, LLC d/b/a Aéropostale ("SPARC") on behalf of herself and Washington consumers who purchased falsely discounted clothing from Aéropostale. According to Montes, Aéropostale perpetrated the false discounting scheme across its website and in its brick-and-mortar stores in violation of the CPA.

Aéropostale is a popular clothing retailer that primarily targets the teen and young adult market. Aéropostale advertised "sales" with large discounts—typically 50% to 70% off—and "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free" offers. Discount offers were often advertised by showing the "regular price" slashed through for a lower sales price. The discount percentage would be calculated from the listed regular price. Unbeknownst to consumers, Aéropostale's products were never or virtually never offered at the so-called regular price, according to the complaint.

Montes purchased several clothing items, including a pair of leggings. The leggings had a list price of $12.50 and were advertised as "on sale" for $6.00. Relying on this representation, Montes believed the leggings had a value of $12.50 and that the "sale" price of $6.00 represented a special bargain. In the six-month period leading up to Montes's purchase, however, the leggings were offered for its "regular price" of $12.50 only on a single day. For all other days, Aéropostale sold the leggings from $5.00 to $6.00. Montes primarily alleges that had she known the truth about the pricing of the leggings, she would not have purchased them.

SPARC moved for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that the CPA's injury element was not met because Montes's

"property interest or money [was not] diminished because of [its] unlawful conduct." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899 (Wash. 2009) (citation and quotation marks omitted).[3]   The district court granted the motion to dismiss with prejudice, stating that "Washington cases that find injury in false advertising are for goods and services that were different and/or worth less than what was advertised," citing as an example *Williams v. Lifestyle Lift Holdings, Inc.*, 302 P.3d 523, 524 (Wash. Ct. App. 2013) (holding that an advertisement that induced a plaintiff to purchase a facelift that was "different" from a medical facelift in that it was minimally invasive and not a "traditional" facelift caused consumer injury under the CPA when the procedure turned out to be a traditional facelift). The district court concluded that Montes failed to state an injury under the CPA.  Relying on two out-of-circuit cases, one from the Sixth Circuit and one from the Southern District of New York, that did not address Washington law,[4] the district court reasoned that because Montes failed to allege "that she did not receive the value that she paid for,"

---

[3] "To prevail on a CPA action, the plaintiff must prove (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property;" and "(5) causation." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 638 (Wash. 2024) (brackets, quotation marks, and citation omitted).  In the district court, Defendant SPARC Group "conceded" that, "for purposes of" Montes's motion to dismiss, "injury is the sole issue" in dispute.

[4] The district court relied upon *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 681 (6th Cir. 2017) (finding no consumer injury on a $300 list price item that a plaintiff purchased as "a $27 item that was offered as a $27 item and that works like a $27 item") and *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 464 (S.D.N.Y. 2020) (collecting "outlet store" cases where plaintiffs did not allege "price tags diminished the value of the goods in any way").

she failed to sufficiently allege consumer injury under the CPA.

## II.

### A.

When state law issues are unclear, we may certify a question to a state's highest court "to obtain authoritative answers." *Toner ex rel. Toner v. Lederle Lab'ys, Div. of Am. Cyanamid Co.*, 779 F.2d 1429, 1432 (9th Cir. 1986), *amended by* 831 F.2d 180 (9th Cir. 1987). We have concluded that certification may be especially necessary when a panel faces "complex" state law issues carrying "significant policy implications." *See, e.g.*, *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015) (citation omitted); *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012) (citation omitted).

Washington law authorizes the state supreme court to accept certified questions from the federal courts. Wash. Rev. Code § 2.60.020. Washington's certification statute allows certification where "it is necessary to ascertain the local law of [Washington] state in order to dispose of [a] proceeding and the local law has not been clearly determined." *Id.* We certify questions that "we believe that the Washington Supreme Court . . . is better qualified to answer . . . in the first instance." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist., No. 1*, 294 F.3d 1085, 1092 (9th Cir. 2002). Thus, certification is especially appropriate when a question of law "'has not been clearly determined' by the Washington courts," and "the answer to our question is outcome determinative." *Bylsma v. Burger King Corp.*, 676 F.3d 779, 783 (9th Cir. 2012) (quoting Wash. Rev. Code § 2.60.020).

**B.**

Next, we identify the issue that is the basis of our certification order: whether Washington law protects consumers from false discounting schemes, and if it does, whether Montes has adequately alleged an injury under Washington's CPA by alleging that she would not have paid the price that she did for a pair of leggings but for misrepresentations about the leggings' discount and price history. As noted earlier, "injury is the sole issue" for purposes of this appeal. Thus, the question of whether Montes pleaded a cognizable injury under Washington's CPA is outcome-determinative in this appeal.

To date, the Washington Supreme Court has not analyzed whether the type of injury that Montes primarily alleges—that she would not have purchased the leggings at all had she known they were only worth $6.00 and not worth the misrepresented original price—constitutes injury under Washington's CPA. In fact, no Washington state court has addressed this precise question. In *Greenberg v. Amazon.com, Inc.*, the Washington Supreme Court described paying a higher price than one otherwise would have as "monetary harm" when answering whether the CPA recognized price gouging as an unfair practice. 553 P.3d 626, 641 (Wash. 2024) (en banc) ("They each suffered monetary harm . . . . They each paid higher prices on consumer goods and food items than they otherwise would have . . . ."). The Washington Supreme Court cautioned, however, that "our holdings today are narrow and simply hold the plaintiffs have stated a cognizable claim for relief under our CPA based on the facts alleged in their complaint." *Id.* at 632. Given the brevity of the Washington Supreme Court's discussion of monetary harm and the Court's instruction on the narrowness of the opinion,

*Greenberg* does not clarify whether falsely misrepresenting a higher original sales price causes an injury under the CPA in the discount advertising context.

In *Mason v. Mortgage America, Inc.*, the plaintiffs, a married couple, purchased a "Commodore Comet" mobile home and contracted with a lender to finance both "the purchase of the mobile home and the site preparation of the [plaintiffs'] land." 792 P.2d 142, 143–44 (Wash. 1990) (en banc). Although the agreement between the plaintiffs and the lender "stated that [the plaintiffs] would grant a deed of trust to secure the obligation, the lender actually had them sign over their property by way of quitclaim deed." *Id.* at 144. The lender also agreed to oversee the site preparation work, and the plaintiffs and the lender selected a contractor to perform the site preparation. *Id.* at 144, 146. Although the contractor's preliminary work added value to the property, the plaintiffs were unhappy with the contractor's work and at their request the lender discharged him. *Id.* at 144. Furthermore, the plaintiffs received a "Commodore *Cameo*" mobile home, and this incorrect home then "remained" on the only partially prepared site, "unoccupied until after [the] lawsuit was commenced." *Id.* (emphasis added). On appeal, the Washington Supreme Court held that the plaintiffs had shown "injury" for purposes of the CPA in two ways. First, the court upheld an actual damages award equivalent to "the sum of money necessary to complete the site preparation work, reduced by the agreed contract price," *id.* at 147, and the court held these damages were compensable, and subject to trebling, under the CPA, *id.* at 149. Second, the court held that, even apart from these actual damages, "[t]he loss of title to the purchasers' real property," which was caused by the erroneous quitclaim deed, was an injury that, by itself would support relief under

the CPA in the form of attorneys' fees and costs. *Id.* In so holding, the court stated that "[t]he injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Id.* at 148. Because *Mason*, in contrast to this case, involved unfair conduct concerning the unsatisfactory quality of services and deception resulting in a wrongful transfer of title to property, it does not provide clear guidance as to the question presented here.

Nor has the Washington Court of Appeals addressed whether a consumer sustains CPA injury in a false discounting scheme, although the Court of Appeals has found CPA injury where misrepresentations about the nature of a medical procedure induced its purchase. In *Williams*, the consumer purchased a cosmetic procedure after seeing it advertised as "relatively quick and painless, unlike traditional cosmetic surgery." 302 P.3d at 524. In reality, the procedure was traditional cosmetic surgery and was similarly painful and invasive. *Id.* at 526. The consumer claimed that she "would not have given her money to Lifestyle Lift but for their advertising and marketing." *Id.* at 527 (quotations omitted). The question the Washington Court of Appeals faced was whether the injury suffered gave rise exclusively to a medical malpractice claim, or whether it was also cognizable as a consumer injury under the CPA. The court held that the injury suffered was compensable under the CPA. *Id.* at 529. Because Williams was not challenging the professional decisions by the doctors who performed the surgery, but rather the "deceptive business strategy" that caused her to purchase the Lifestyle Lift, the cost of Williams's surgery was "an injury to her business or property" for which the jury could find she was owed a

refund. *Id.* at 529. Notably, the consumer in *Williams* was not misled about the price or price history of her procedure; rather, she was misled about non-price, qualitative factors, *i.e.*, the painfulness, invasiveness, and time-intensiveness of the advertised cosmetic procedure. Accordingly, *Williams* does not answer the question presented by this case, because Montes is alleging that SPARC falsely advertised the price history of certain products, not any specific qualitative, non-price features of those products.

Similarly, the Western District of Washington has concluded that an "injury to business or property" can be the cost of a product a consumer would not have purchased but for false advertising. In *Water & Sanitation Health, Inc. v. Chiquita Brands International, Inc.*, the plaintiff, a non-profit organization dedicated to providing sustainable water systems, purchased Chiquita bananas in reliance on Chiquita's online advertising about its safe environmental practices. No. C14-10 RAJ, 2014 WL 2154381, at *1 (W.D. Wash. May 22, 2014). The district court concluded that the plaintiff had "plausibly alleged an injury to its business or property in alleging that its injury is the cost of the bananas purchased as a result of the allegedly false or deceptive advertising." *Id.* at *2. And, in *Grigsby v. Valve Corp.*, Grigsby alleged that had he known that Valve was not reasonably protecting his personal and private information, he would not have paid the price that he did or he would not have purchased the products at all. No. C12-0553JLR, 2013 WL 12310666, at *3 (W.D. Wash. Mar. 18, 2013). The district court concluded that these allegations were sufficient to establish cognizable CPA injury. *Id.* Like *Williams*, these cases address false advertising about the product, therefore they do not directly address whether false discounting schemes can result in CPA injury.

We have found only two Western District Court decisions analogous to the facts here. In *Nemykina v. Old Navy, LLC*, Nemykina alleged that Old Navy engaged in the deceptive practice of advertising items at a so-called discount when in reality the items were "rarely if ever" offered at a higher price. 461 F.Supp.3d 1054, 1056–57 (W.D. Wash. 2020). Like Montes, Nemykina alleged that she would not have purchased the items at the price that she paid but for these misrepresentations. *Id.* at 1061. The district court concluded that the consumer properly alleged an injury under the CPA, reasoning that "[i]nducing a plaintiff into spending money she otherwise would not have spent, based on a misrepresentation, is clearly a cognizable injury . . . ." *Id.* In *Fitzgerald v. Shade Store, LLC*, Fitzgerald alleged that the Shade Store created an "illusion" that customers were receiving limited-time discounts when, in fact, "the shades [were] never sold at non-sale prices." No. C23-1435RSM, 2024 WL 3540540, at *1 (W.D. Wash. Jul. 25, 2024). The district court held that she adequately alleged an injury under the CPA by stating she "would not have made the purchase if she had known that the Product was not discounted as advertised." *Id.* at *2.

Our court has explained why an allegation of a false discounting scheme is an injury under California law. Much like the CPA, California's Unfair Competition Law (UCL) requires that consumers demonstrate some form of economic injury and recognizes that even minimal losses to a consumer's money or property constitute an injury under the statute. Cal. Bus. & Prof. Code § 17204; *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). We held that under California law, "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the

purchase but for the misrepresentation, he has standing to sue under the UCL." *Id.* at 1107. As here, the district court in *Hinojos* reasoned that the consumer failed to state an injury because the consumer "acquired the merchandise he wanted at the price that was advertised" and, therefore, "lost neither money nor property." *Id.* at 1101–02. We rejected this argument—as the California Supreme court had also previously rejected in the false labeling context[5]—because misinformation about a product's regular or original price affects the consumer's valuation of the product. *Id.* at 1102, 1104, 1106 ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." (quoting Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992))). Therefore, our court concluded that the plaintiffs had adequately alleged an injury under California's consumer protection laws. *Id.* at 1107; *but see Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) (concluding that the plaintiff did not "suffer[] a legally cognizable injury" under the Massachusetts Consumer Protection Act when "she was 'induced' to make a purchase she would not have made, but for the false sense of value created by Nordstrom's pricing scheme").

Finally, we have certified a similar question to the Oregon Supreme Court regarding Oregon's Unlawful Trade Practices Act (UTPA). *See Clark v. Eddie Bauer LLC*, 30 F.4th 1151 (9th Cir. 2022). The Oregon Supreme Court responded that a consumer suffers an ascertainable loss as required by the UTPA when the purchase is induced by a false representation about the product's price, comparative

---

[5] *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877 (Cal. 2011).

price or price history even though the misrepresentation was not about the product itself. *Clark v. Eddie Bauer LLC*, 532 P.3d 880, 883 (Or. 2023). The Oregon Supreme Court described its rationale as "the purchase price theory" and held "if plaintiff can prove that she would not have purchased defendants' garments had defendants not misrepresented their price history, plaintiff will satisfy the 'ascertainable loss' requirement under the UTPA." *Id*. at 893.

Because this issue is complex and involves policy considerations that are best left to the State of Washington's own courts, we have concluded that it is prudent to certify this question to the Washington Supreme Court so that it may determine its own law in the first instance.

## III.

In light of the foregoing discussion, we hereby certify the following question to the Washington Supreme Court:

> When a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an "injur[y] in his or her business or property" under Wash. Rev. Code §§ 19.86.020 and 19.86.090 if the consumer pays the advertised price?

We do not intend the phrasing of our question to restrict the Washington Supreme Court's consideration of this issue. We recognize that the Washington Supreme Court may, in its discretion, reformulate the question. *Broad v.*

*Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

The Clerk of the Court is directed to transmit to the Washington Supreme Court, under official seal of the Ninth Circuit, this order and request for certification along with copies of all relevant briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.020 and 2.60.030.

If the Washington Supreme Court accepts the certified question, we designate Montes as the party to file the first brief pursuant to Washington Rule of Appellate Procedure 16.16(e)(1).

Further proceedings before us are stayed pending the Washington Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order. The Clerk is directed to administratively close this docket pending further order. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Washington Supreme Court's decision to not accept the certified question.

When the Washington Supreme Court decides whether to accept the certified question, the parties will promptly file a joint status report informing us of the decision. If the Washington Supreme Court accepts the certified question, the parties will file another joint status report informing us when the Washington Supreme Court issues an answer to the certified question promptly upon the issuance of that determination.

**IT IS SO ORDERED.**

COLLINS, Circuit Judge, concurring in the result:

I concur in the decision to certify to the Washington Supreme Court the question set forth in the majority's order, which concerns the circumstances, if any, under which a consumer who purchases a product due to a misrepresentation about its discounted price, comparative price, or price history suffers a cognizable injury for purposes of Washington's Consumer Protection Act ("CPA"). However, for two reasons, I do not join the reasoning in the majority's order.

First, in describing Plaintiff's first theory of injury, namely, her "purchase price theory," I would rely on the more refined understanding of that theory that Plaintiff has helpfully presented in her appellate briefing rather than on the more vague and confusing wording used in the complaint. As Plaintiff explained in her opening brief, this first theory is a "purchase price" theory because it "focuses on misrepresentations that induce customers to make purchases *that they otherwise would not have made*—with the injury being the money spent on those purchases" (emphasis altered). That is, Plaintiff argues that, because "she would not have purchased the Leggings but for Aéropostale's misrepresentations," she "would still have the money she spent on the Leggings if not for Aéropostale's misrepresentations." The theory is thus a transaction-causation theory, with the asserted injury and measure of damages being the full purchase price, with no reduction for value received. To the extent that the majority's discussion of this first theory suggests that it instead relies on the premise that the available purchase price *changed* due to the alleged misrepresentation, and would have been lower in the absence of it, I do not think that is correct. That is the

premise of Plaintiff's third or "price premium" theory, but she has now made clear (as her complaint perhaps did not) that her first or "purchase price" theory does not also rely on that premise.

Second, although the relevant question for certification purposes is whether Washington law is sufficiently clear from the appellate precedents of the Washington courts, the majority provides an irrelevant summary of cherry-picked decisions addressing California and Oregon law, as well as non-precedential decisions from federal district courts in Washington that are not binding either on this court or on the Washington Supreme Court. I would have omitted all such unnecessary discussion. But even if I thought it should be included, I would at least also include a fairer sampling of the many non-Washington decisions that have reached conclusions contrary to those selectively cited by the majority. *See*, *e.g.*, *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 473–76 (N.J. 2024); *Hennessey v. Gap, Inc.*, 86 F.4th 823, 828–30 (8th Cir. 2023) (Missouri law); *Su Yeun Kim v. Carter's Inc.*, 598 F.3d 362, 365–66 (7th Cir. 2010) (Illinois law). Moreover, California's and Oregon's respective consumer protection laws may not be the most germane here, given that, unlike Washington's CPA, they contain provisions expressly prohibiting false discount schemes. *See* Or. Rev. Stat. § 646.608(1)(j); Cal. Bus. & Prof. Code § 17501. Indeed, Plaintiff's counsel conceded at oral argument that there is no state or federal appellate precedent that adopts Plaintiff's purchase price theory of injury under the law of a State that *lacks* a special statute, such as in California or Oregon, that specifically condemns price-discount misrepresentations.

With these observations, I agree with the decision to certify the question posed by the majority to the Washington Supreme Court.