Filed 7/31/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| M. GEORGE HANSEN et al., | B271477 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC566698) |
| v. | |
| NEWEGG.COM AMERICAS, INC., | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, John Shepard Wiley Jr., Judge.  Reversed.

Finkelstein & Krinsk, Jeffrey R. Krinsk, David J. Harris and Trenton R. Kashima, for Plaintiffs and Appellants.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rho, Thomas R. Freeman, Ekwan E. Rhow and David I. Hurwitz, for Defendant and Respondent.

_____

Plaintiff M. George Hansen filed false advertising claims under the unfair competition law (Bus. & Prof. Code, § 17200), the false advertising law (Bus. & Prof. Code, § 17500 *et seq.*) and the Consumers Legal Remedies Act (Civ. Code, § 1750 *et seq.*) alleging that electronics retailer Newegg.com used fictitious former price information in its advertisements that mislead customers to believe they were receiving merchandise at a discounted price. Hansen further alleged that he had relied on fictitious former price information in making two purchases from Newegg's website, and that he would not have made the purchases had he known the former price information was false.

Newegg filed a demurrer arguing that Hansen lacked standing to pursue his claims because he had not lost "any money or property" (see Bus. & Prof. Code, §§ 17204, 17535) as a result of the allegedly false former price representations. More specifically, Newegg contended that although Hansen alleged he had spent money in reliance on the false former price representations, his complaint showed he received the "benefit of his bargain," having obtained the product he wanted at the price it was offered. The trial court agreed, and sustained the demurrer without leave to amend. We reverse.

## FACTUAL BACKGROUND

### A. *Summary of the Complaint*

Plaintiff M. George Hansen filed a class action complaint against electronics retailer Newegg.com alleging claims under the unfair competition law (Bus. & Prof. Code, § 17200[1]) (UCL), the

---

[1] Unless otherwise noted, all further statutory citations are to the Business and Professions Code.

false advertising law (§ 17500, *et seq*.) (FAL) and the Consumer Legal Remedies Act (Civ. Code, § 1750 *et seq*.) (CLRA). The complaint alleged that Newegg's website advertised fictitious former price and discount information that was intended to induce customers to purchase its products: "When advertising products on its website, Newegg displays the price at which it offers the product . . . as well as the 'list' price. This 'list' price is displayed in gray struck-through typeface (e.g. '$~~2099.99~~') directly above [Newegg's] offer price. [Newegg] further advertises that the difference between this 'list' price and the offer price is some form of discount or purported savings (e.g. 'Save: $200.00 (29%)'). Such presentation induces reasonable consumers into believing that the 'list' price represents either the product's normal price on [Newegg's] website and/or prevailing price in the market. However, these advertised 'discounts' are completely illusory or grossly overstated. [¶] This is because the 'list' price used to calculate the quantum of reported 'savings' is not the prevailing market price for . . . the same product from one of Newegg's competitors or the price charged by Newegg for the subject item in the recent and normal course of its business. Rather, the 'list' price is the highest price the product has ever been advertised at, regardless of when that price was advertised, or is simply a work of fiction. . . . [¶] The reality is that no discount is provided over Newegg's everyday pricing. Its customers are not realizing the savings portrayed or expected by purchasing these advertised 'discounted' products from Newegg."

Hansen's complaint further alleged that he had relied on fictitious former price information when purchasing two computer components from Newegg's website: a "Corsair . . . 850-watt Power Supply" and a "Gigabyte Motherboard." According to

3

the complaint, the Corsair power supply was advertised as having a former "list" price of $189.99, and an offer price of $169.99, resulting in a "$20.00" discount; the Gigabyte Motherboard was advertised as having a former "list" price of $159.99, and an offer price of $152.99, resulting in a "$7.00" discount. Hansen asserted that the true former price of both products was equal to or less than the offer price, and that he had therefore received no actual discount. Hansen further asserted that he would not have purchased the products had he known the "true nature of [the] discounts."

The complaint alleged Newegg's use of false or misleading former price information violated the UCL (§ 17200) and section 17501 of the FAL, which specifically regulates advertisements that purport to convey the former price of a product. The complaint also alleged that Newegg's conduct violated a provision of the CLRA prohibiting the use of false or misleading statements regarding price reductions. (See Civ. Code, § 1770, subd. (a)(13).)

B. *Summary of Newegg's Demurrer*

Newegg filed a demurrer arguing that Hansen lacked "standing to . . . assert any claim under the FAL, UCL or CLRA" because he had "suffered no loss of money or property as a result of Newegg's actions." According to Newegg, Hansen's complaint showed he had received the "products he wanted for the prices he agreed to pay"; he had not alleged that "the products were different than what he wanted, were unsatisfactory in any way, or were worth less than what he paid for them." Accordingly, he had suffered no form of "economic injury."[2]

---

[2] Newegg's demurrer also argued that Hansen's claims failed on their merits because, as a matter of law, a reasonable

4

Hansen opposed the demurrer, arguing that under the California Supreme Court's holding in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 (*Kwikset*), a plaintiff may satisfy the standing requirements of the UCL and FAL by alleging that he or she was "deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." (*Id.* at p. 317.) Hansen contended his complaint satisfied those requirements, alleging that: (1) he had relied on Newegg's fictitious former price information when making his purchases; and (2) he would not have purchased the products but for the false former price representations.

The trial court agreed with Newegg, concluding that Hansen had not satisfied "the standing requirement[s]" because his complaint showed he had received the product that he ordered "at a price he agreed to pay." The court explained that unlike the plaintiffs in *Kwikset*, who alleged that the products they purchased had been falsely labeled as "Made in the U.S.A," Hansen did not dispute that he had received "[e]xactly what he ordered." The court sustained the demurrer without leave to amend, and subsequently entered judgment dismissing the matter.

## DISCUSSION

### A. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a

consumer was not likely to be deceived by its advertising practices. The trial court did not address this argument in its ruling, and Newegg has not raised the argument on appeal. We therefore address only the issue of standing.

5

reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]'  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]"  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

### B. Summary of Applicable Law

#### 1. Summary of the UCL, FAL and CLRA

The UCL prohibits "unfair competition," which it defines as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]."  (§ 17200.)  "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  "'In service of that purpose, the Legislature framed the UCL's substantive provisions in "'broad, sweeping language'" [citations] and provided 'courts with broad equitable powers to remedy violations' [citation]."  (*Kwikset*, *supra*, 51 Cal.4th at p. 320.)

"The state's false advertising law (§ 17500 *et seq*.) is equally comprehensive within the narrower field of false and misleading advertising."  (*Kwikset*, *supra*, 51 Cal.4th at p. 320.)  "'[A]ny violation of the false advertising law . . . necessarily violates the

6

UCL.'" (*Kasky, supra*, 27 Cal.4th at p. 950.) Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."' [Citation.]" (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 679.) Section 17501 specifically limits the use of advertisements that purport to convey the former price of a product: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." As used in section 17501, the term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly –,' 'regularly –,' 'usually –,' 'originally –,' 'reduced from ___,' 'was ___ now ___,' '___% off.'" (4 Cal. Code Regs., § 1301.)

'"The CLRA makes unlawful . . . various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."' [Citation.] . . . . [¶] 'The CLRA sets forth 27 proscribed acts or practices. (Civ. Code, § 1770, subd. (a)(1)-(27).)" (*Veera v. Banana Republic, LLC* (2016) 6 Cal.App.5th 907, 915 (*Veera*).) One of those "proscribed acts" is "[m]aking false or misleading statements of fact concerning . . . [the] existence of, or amounts of, price reductions." (Civ. Code, § 1770, subd. (a)(13).)

## 2. *Summary of the statutes' standing requirements*
### a. *Standing under the UCL and the FAL*

In 2004, California passed Proposition 64, which "materially curtailed the universe of those who may enforce the[] provisions [of the UCL and the FAL.] . . . [W]here once private suits could be brought by 'any person acting for the interests of itself, its members or the general public' [citations], now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." (*Kwikset*, *supra*, 51 Cal.4th at pp. 320-321; see also §§ 17204; 17535.) "The intent of this change was to confine standing to those actually injured by a defendant's business practices and curtail the prior practice of filing suits on behalf of "'clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the defendant. . . .'" [Citation.]" (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788.) Although "voters clearly intended to restrict UCL [and FAL] standing, they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." (*Ibid.*)

"To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset*, *supra*, 51 Cal.4th at p. 322.) "'[T]he quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact; [which] . . . is not a substantial

8

or insurmountable hurdle. . . . [Citation.]' [Citation.]" (*Veera, supra,* 6 Cal.App.5th at p. 916 [citing and quoting *Kwikset, supra,* 51 Cal.4th at p. 322].) "Because . . . economic injury is itself a form of injury in fact, proof of lost money or property will largely overlap with proof of injury in fact. [Citation.] If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." (*Kwikset, supra,* 51 Cal.4th at p. 322.)

### b. *Standing under the CLRA*

"To have standing to assert a claim under the CLRA, a plaintiff must have 'suffer[ed] any damage as a result of the . . . practice declared to be unlawful.'" (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 802; see also Civil Code, § 1780, subd. (a) ["Any consumer who suffers any damage as a result of the use . . . of a . . . practice declared to be unlawful by Section 1770 may bring an action . . ."].) Our Supreme Court has interpreted the CLRA's "any damage" requirement broadly, concluding that the "phrase . . . is not synonymous with 'actual damages,' which generally refers to pecuniary damages." (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 640.) Rather, the consumer must merely "experience some kind of damage," or "some type of increased costs" as a result of the unlawful practice. (*Ibid.*; *Bower v. AT & T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1556 ["A plaintiff bringing a CLRA cause of action must not only be exposed to an unlawful practice but also have suffered 'some kind of damage'"].)

For the purposes of this appeal, the parties agree that the CLRA's standing requirements are effectively identical to those of the UCL and FAL, and that we may thus analyze the question of standing under each statute "concurrently." (See *Veera, supra,* 6

9

Cal.App.5th at p. 916 [agreeing to consider question of standing under the UCL, FAL and CLRA "together" where plaintiff had "conceded that . . . the requirements of the CLRA are essentially identical to those of the UCL and FAL"].)

### 3. *Kwikset v. Superior Court*

In *Kwikset*, *supra*, 51 Cal.4th 310, the California Supreme Court addressed Proposition 64's standing requirements in the context of a false advertising claim alleging that the defendant had marketed and sold locksets that were "falsely . . . labeled as 'Made in U.S.A.'" (*Id*. at p. 317.) The complaint alleged that each plaintiff "'was induced to purchase and did purchase [d]efendants' locksets due to the false representation that they were "Made in U.S.A., and would not have purchased them if they had not been so misrepresented.'" (*Id*. at p. 319.)

Defendant filed a demurrer arguing that plaintiffs lacked standing because the allegations in the complaint showed they had not suffered any form of economic injury. The Court of Appeal agreed, concluding that while plaintiffs had alleged an injury in fact, they had not alleged any loss of money or property: "Plaintiffs spent money to be sure, but . . . they received locksets in return, locksets they did not allege were overpriced or defective. Thus, while their 'patriotic desire to buy fully American-made products was frustrated,' that injury was insufficient to satisfy the standing requirements of sections 17204 and 17535." (*Kwikset*, *supra*, 51 Cal.4th at pp. 320-321.)

The Supreme Court reversed, holding that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." (*Kwikset*,

10

*supra*, 51 Cal.4th at p. 317.) As stated by the Court: "At [the pleading] stage, these plaintiffs need only allege economic injury arising from reliance on [the defendant's] misrepresentations. According to the . . . complaint, (1) [defendant] labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing [defendant's] locksets, and (4) plaintiffs would not have bought the locksets otherwise. On their face, these allegations satisfy all parts of the section 17204 standing requirement." (*Id.* at pp. 327-328.)

The Court explained that the "marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. . . . [¶] To some consumers, processes and places of origin matter. [Citations.] . . . [¶] In particular, to some consumers, the 'Made in U.S.A.' label matters." (*Kwikset, supra*, 51 Cal.4th at pp. 328-329 [footnotes omitted].) The Court noted that the "Legislature ha[d] recognized the materiality of this [form of] representation by specifically outlawing deceptive and fraudulent 'Made in America' representations." (*Id.* at p. 329 [citing § 17533.7 [prohibiting deceitful representations that a product was "Made in the U.S.A."] and Civ. Code, § 1770, subd. (a)(4) [prohibiting deceptive representations of geographic origin].)

The Court emphasized that under its interpretation of Proposition 64, "a plaintiff's subjective motivations in making a purchase" (*Kwikset, supra*, 51 Cal.4th at p. 330, fn. 14) are relevant in determining whether the "loss of money or property" requirement has been satisfied: "For each consumer who relies

11

on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent." (*Kwikset*, supra, 51 Cal.4th at pp. 329-330.)

The Court also clarified exactly why a consumer's allegation that he or she would not have purchased a product but for the defendant's misrepresentation is sufficient to establish economic injury: "From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue." (*Kwikset, supra,* at p. 330.)

The Court noted that a contrary conclusion would effectively "bring to an end private consumer enforcement of bans on many label misrepresentations. . . . The UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions. [Citations.] Contrary to that general purpose, if we were to deny standing to consumers who have been deceived by label misrepresentations

12

in making purchases, we would impair the ability of consumers to rely on labels, place those businesses that do not engage in misrepresentations at a competitive disadvantage, and encourage the marketplace to dispense with accuracy in favor of deceit." (*Kwikset*, *supra*, 51 Cal.4th at pp. 330-331.)

The Court also addressed the Court of Appeal's conclusion that plaintiffs lacked standing under the UCL because, although they had spent money, "they 'received locksets in return[,]' . . . . and did not allege the locksets were defective, overpriced, or of inferior quality." (*Kwikset*, supra, 51 Cal.4th at pp. 329-330.) The Court explained "that nothing in the open-ended phrase 'lost money or property' supports limiting the types of qualifying losses to functional defects of these sorts and excluding the real economic harm that arises from purchasing mislabeled products in reliance on the truth and accuracy of their labels." (*Kwikset*, *supra*, 51 Cal.4th at p. 331.)

The Court likewise rejected the Court of Appeal's "interrelated" conclusion that plaintiffs lacked standing because "consumers who receive a fully functioning product have received the benefit of their bargain, even if the product label contains misrepresentations that may have been relied upon by a particular class of consumers." (*Kwikset*, *supra*, 51 Cal.4th at p. 332.) The Court explained that while the "benefit of the bargain" theory might apply in cases where the alleged misrepresentation was not material in nature, it was inapplicable to UCL claims involving a material misrepresentation. According to the Court, a "'misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question". . . .' [Citations]." (*Id.* at pp. 332-333.)

13

The Court concluded that the Legislature's prohibition on the use of false or misleading "Made in the U.S.A." labels demonstrated that it had concluded such representations are in fact material.[3]

### C. Hansen Has Standing to Pursue His Claims

Hansen argues that under *Kwikset*, he has satisfied the UCL and FAL's standing requirements by alleging that: (1) Newegg advertised that its products were being offered at a discount from their former or original price; (2) these representations were false or misleading; (3) Hansen saw and relied on the former price representations when purchasing the products; and (4) he would not have purchased the products but for the false former price representations. Hansen contends that, as with the plaintiffs in *Kwikset*, he has suffered economic injury by having "paid more for [a product] than he . . . otherwise [would] have been willing to pay if the product had been labeled accurately." (*Kwikset*, *supra*, 51 Cal.4th at p. 329.)

Newegg, however, argues that *Kwikset* is limited to cases in which the consumer alleges that he or she "pa[id] more for a product than he or she would have been willing to pay but for a material misrepresentation about . . . an attribute of that product." According to Newegg, a misrepresentation regarding a product's former price is "fundamentally different than a misrepresentation about a product or its attributes. When . . . consumer[s] pay[] for and receive [products] at the specified price and those products are what they were represented to be, there is

---

[3]     As discussed (see *ante* at p. 7, *post* at pp. 19-20), the Legislature has also specifically prohibited false former price advertising, as it did false labeling of origin. (See § 17501, Civ. Code, § 1770, subd. (a).)

14

no disparity in *economic value* to the consumer and therefore no *economic* injury."

### 1. *Hinojos v. Kohl's Corporation*

We are not aware of any published California state court decision that has addressed whether a consumer who alleges that he or she paid more for a product based on false former price or discount information has standing to sue under the UCL and FAL. In *Hinojos v. Kohl's Corporation* (9th Cir. 2013) 718 F.3d 1098 (*Hinojos*), however, a unanimous panel of the United States Court of Appeals for the Ninth Circuit concluded that, under *Kwikset*, plaintiffs had standing to pursue such a claim. As in this case, the plaintiff in *Hinojos* filed claims under the UCL, the FAL and the CLRA alleging that a company had used fictitious former price information on its labels to mislead consumers into believing they were receiving a substantial discount. The plaintiff also alleged he "'would not have purchased [the] products . . . in the absence of [defendant's] misrepresentations.'" (*Id*. at p. 1102.) The district court dismissed the complaint, "determining that [the plaintiff] did not have standing under the UCL or the FAL . . . because [he] had acquired the merchandise he wanted at the price advertised." (*Ibid*.)

The Ninth Circuit reversed, explaining that *Kwikset* had identified "precisely what a plaintiff must allege when he wishes to satisfy the economic injury requirement in a case involving false advertising: '[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation.' [Citation.]" (*Hinojos, supra,* 718 F.3d at p. 1104 [citing and quoting *Kwikset, supra,* 51 Cal.4th at p. 330].)

15

The Ninth Circuit concluded the plaintiff had satisfied those requirements by alleging that "the advertised discounts conveyed false information about the goods he purchased, i.e., that the goods he purchased sold at a substantially higher price [from the defendant] in the recent past and/or in the prevailing market. He also alleges that he would not have purchased the goods in question absent this misrepresentation. This is sufficient under *Kwikset*." (*Ibid*.)

In its analysis, the court rejected two "interrelated" arguments the defendant had raised regarding the scope of *Kwikset's* holding. First, defendant asserted that *Kwikset* was "limited [to] . . . cases involving 'factual misrepresentations about the composition, effects, origin, and substance of advertised products'"; second, the defendant argued that the rationale of *Kwikset* did not apply to false discount claims because, in such cases, "there [is] 'no difference in value between the product "as labeled" and the product "as it actually is," because the products . . . are one and the same.'" (*Hinojos, supra,* 718 F.3d at p. 1104.) The Ninth Circuit explained that both arguments were predicated on the same assumption: that "when a merchant misrepresents the 'regular' price of his wares, it does not misrepresent the innate value of those wares so the misled consumer has suffered no economic injury; he gets the product he expected at the price he expected." (*Ibid*.)

The court concluded, however, that "*Kwikset* [could not] be so easily limited," explaining that just as "a product's origin or composition" matters to some consumers, "a product's 'regular' or 'original' price matters [to other customers]; it provides important information about the product's worth and the prestige that ownership of that product conveys. [Citations.] Misinformation

16

about a product's 'normal' price is, therefore, significant to many consumers in the same way as a false product label would be. [Citation.] That, of course, is why retailers like [the defendant] have an incentive to advertise false 'sales.' It is also why the California legislature has prohibited them from doing so." (*Hinojos, supra,* 718 F.3d at pp. 1105-1106 [citing § 17501.)[4]

*2. The Ninth Circuit correctly applied California law*

We agree with the Ninth Circuit's conclusion that under *Kwikset*, the UCL and FAL's standing requirements are satisfied when a consumer has alleged that he or she relied on fictitious former price information in making a purchase, and would not have made the purchase but for the misrepresentation. *Kwikset* plainly states that a "consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation." (*Kwikset, supra,* 51 Cal.4th at p. 330.) The Court's decision contains no language limiting that rule to misrepresentations regarding the physical characteristics or "attributes" of a product.

Nor does the decision suggest, as Newegg posits, that a consumer must allege the product he or she received was worth less than, or not functionally equivalent to, the product as it was advertised. To the contrary, *Kwikset* held that a consumer's

---

[4]     The Ninth Circuit also held that plaintiff had standing to assert his CLRA claim, concluding that "any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, a fortiori, have suffered 'any damage' for purposes of establishing CLRA standing." (*Hinojos, supra,* 718 F.3d at p. 1108.)

17

subjective willingness to pay more for the product than he or she would have been willing to pay in the absence of the misrepresentation is itself a form of economic injury "whether or not a court might objectively view the products as functionally equivalent." (*Kwikset*, supra, 51 Cal.4th at pp. 329-330.)

Moreover, as *Hinojos* noted, interpreting *Kwikset* in the manner Newegg proposes would effectively preclude consumers from bringing false advertising claims predicated on deceptive former price and discount information, despite the fact that the Legislature has specifically prohibited that practice. (§ 17501, Civ. Code, § 1770, subd. (a).) *Kwikset* makes clear that Proposition 64 was not intended to eliminate consumers' ability to pursue UCL and FAL claims for misleading advertisements that induced them to make a purchase they would not have otherwise made. (*Kwikset*, *supra*, 51 Cal.4th at pp. 330-331; see also (*Hinojos, supra,* 718 F.3d at p. 1106 ["*Kwikset* emphasized that Proposition 64 was enacted not to eliminate individual consumer suits when the consumer was actually deceived by a misleading advertisement"].)[5]

---

[5] Newegg contends that limiting *Kwikset* in the manner it has proposed would not preclude all forms of consumer suits challenging the use of false or misleading former price information. According to Newegg, this form of claim would still be available to consumers who can show that they "could have purchased the product elsewhere for less money absent the misrepresentation." *Kwikset*, however, held that a consumer's decision to pay more for a product than he or she would have but for the misrepresentation is itself a form of economic injury: "[I]n the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase, and further inquiry into such subsequent transactions, actual or

18

Newegg argues there are several reasons why we should decline to follow *Hinojos and* hold that *Kwikset* does not extend to fictitious former price claims in which the plaintiff has not challenged any representation related to the product other than its purported former price.  First, Newegg argues that, unlike a consumer who is willing to pay more for a product that was manufactured in the United States, a consumer such as Hansen "cannot rationally claim he was willing to pay more money for the [product he purchased] because he believed they were discounted than he would have been willing to pay had he known they were not discounted."  Newegg appears to contend that, as a matter of law, a rational consumer would not pay more for a product based on its advertised former price.  Thus, under Newegg's rationale, it would be irrational for a consumer to be willing to pay $50 for a sweater that is advertised as having had an original price of $100, but be unwilling to pay $50 for that same sweater in the absence of the advertised discount.  According to Newegg, a rational consumer would not be affected by this discount information because "the economic value [of the product] is the same regardless [of] the price's status as a 'discount.'"

This argument ignores a simple fact:  Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction.  (See § 17501; Civ. Code, § 1770, subd. (a)(13).)  These statutes make clear that, contrary to Newegg's assertions, our Legislature has concluded "reasonable people can and do attach importance to [a product's former price] in their purchasing decisions."  (*Kwikset, supra*, 51

hypothesized, ordinarily is unnecessary." (*Kwikset, supra*, 51 Cal.4th at p. 334.)

19

Cal.4th at p. 333 [statutory prohibition on use of deceitful "Made in U.S.A." labels shows that reasonable consumers do rely on that form on information]; see also *id.* at p. 329 [Legislature's prohibition on deceitful Made in the U.S.A. labels demonstrates "the materiality of this representation"].)  As noted in *Hinojos*, this conclusion is supported by empirical research showing that the presence of a higher original price affects consumers' perceptions "about the product's worth," and increases their willingness to buy the product.  (*Hinojos*, *supra*, 718 F.3d at p. 1106.)

Newegg next asserts that *Hinojos* conflicts with prior California case law holding that "a consumer who pays the specified price for a product and receives that product has obtained the 'benefit of the bargain and cannot therefore show an economic injury' – absent specific allegations such as the product was different than it was represented to be, unsatisfactory in some manner, or worth less than the amount paid."  In support, Newegg cites two decisions, *Time v. Hall* (2008) 158 Cal.App.4th 847 (*Time*), and *Petersen v. Cellco Partnership* (2008) 164 Cal.App.4th 1583 (*Petersen*), which cites *Time* and was written by the same court.  In both cases, the court concluded the plaintiffs lacked standing to pursue UCL claims because their pleadings demonstrated they had "received the benefit of their bargain, having obtained the [advertised product] at the bargained for price."  (*Petersen, supra,* 164 Cal.App.4th at p. 1591; see also *Time, supra,* 158 Cal.App.4th at p. 855 [plaintiff lacked standing because he had received the advertised product in exchange for the advertised price, and had not alleged it was "worth less than what he paid for it"].)

20

These cases, however, were decided before *Kwikset*, which held that the "benefit of the bargain" theory has no relevance when the misrepresentation underlying the UCL claim is material in nature.  (See *Kwikset*, 51 Cal.4th at pp. 332-333; see also *Hinojos*, *supra*, 718 F.3d at p. 1107 ["'benefit of the bargain' rationale was explicitly rejected in *Kwikset*" for UCL claims that allege a material misrepresentation].)  As explained above, our Legislature's decision to prohibit the use of false and misleading former price information shows that it has deemed such misrepresentations to be material.[6]

Finally, Newegg argues that cases from several other jurisdictions have rejected similar "false discount claims," and asserts that *Hinojos* "is the sole exception."  However, none of the decisions Newegg cites address claims brought under California's UCL or FAL, nor do they involve an application of *Kwikset*.  Instead, the cases apply other state court's interpretations of those state's false advertising laws.

For example, in *Kim v. Carter's* (7th Cir. 2010) 598 F.3d 362 (*Kim*), which Newegg characterizes as "the leading case" in

---

[6]     The same court that decided *Time* and *Peterson*—Division Three of the Fourth District—also wrote the decision that the Supreme Court reversed in *Kwikset*.  Division Three's conclusion that the *Kwikset* plaintiffs lacked standing to pursue their false advertising claims appears to have been based on the same "benefit of the bargain" reasoning that it had previously employed in *Hall* and *Petersen*.  (See *Kwikset*, *supra*, 51 Cal.4th at pp. 319-320, 332 [explaining that Court of Appeal found plaintiffs lacked standing because they had received "the benefit of their bargain," namely "locksets that were not [were not alleged to be] overpriced or defective"].)  The Supreme Court explicitly rejected that analysis.

this subject area, plaintiffs filed a complaint under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) alleging that defendant had advertised a fictitious "suggested" price for its products that mislead consumers to believe "they were realizing significant savings." (*Id*. at p. 363.) The Seventh Circuit explained that to maintain a private action under the ICFA, a plaintiff must establish that he or she suffered "actual damages" as a result of the challenged conduct. The Seventh Circuit further explained that, in the context of false advertising claims, Illinois state courts had interpreted the "actual damages" provision to require the consumer to show that defendant's conduct "caus[ed] [him or] her to pay 'more than the actual value of the property.'" (*Id*. at p. 365.) Applying that standard, the Seventh Circuit concluded that plaintiffs' claim failed because they had not alleged the products they received were actually worth less than what they had paid.

Similarly, in *Belcastro v. Burberry Limited* (S.D.N.Y. Feb. 23, 2017, No. 16-CV-1080) 2017 WL 744596 (*Belcastro*), the plaintiff filed claims under New York and Florida law alleging that the defendant had used a fictitious retail price in advertising its clothing. As in this case, plaintiff further alleged he would not have made the purchase in the absence of the false pricing information. The district court dismissed the claim, explaining that New York and Florida law both required plaintiff to show "the defendant's deception" had caused him to pay more for the product than it was actually worth. (See *id*. at pp. *4-*6.)

The court specifically distinguished *Hinojos*, noting that the Ninth Circuit's decision addressed "standing under [an unrelated] California statutory cause of action." (*Belcastro, supra,* at p. *5.) The court further explained that *Hinojos* was of

22

"limited relevance" because, "[u]nder California law, a plaintiff sufficiently alleges injury based on allegations that the defendant's false advertising caused them subjectively to assign a higher value to the good than they would have otherwise. Simply alleging that plaintiff would not have made the same purchasing decision but for the misrepresentation is not adequate under New York [or Florida] law." (*Ibid.*)[7]

As *Belcastro* implicitly acknowledges, California law is different. The Supreme Court has concluded that to establish standing under California's UCL and FAL, a consumer need only allege that he or she relied on a misrepresentation when purchasing the product, and that he or she would not have purchased the product but for the representation. (*Kwikset*,

---

[7] The other false discount cases Newegg cites likewise involve the application of other state courts' interpretation of their own false advertising laws. (See e.g., *Carters Johnson v. Jos. A. Bank Clothiers, Inc.* (S.D. Ohio, Aug. 19, 2014, No. 2:13-cv-756) 2014 WL 4129576, *4 [under Ohio's Consumer Sales Practices Act, plaintiff was required to plead and prove "actual damages," which, under Ohio law, is "measured by calculating 'the difference between the value of property as it was represented to be and its actual value at the time of its purchase'"]; *Shaulis v. Nordstrom* (1st Cir. 2017) 865 F.3d 1, 10-11 [under the Massachusetts Supreme Judicial Court's interpretation of the Massachusetts's false advertising law, plaintiff's allegation that she was induced to make a purchase she would not have made but for the "false sense of value created by" defendant's fictitious discount did not qualify as a cognizable injury].)

23

*supra*, 51 Cal.4th at p. 317.)  Hansen satisfied both of those requirements.[8]

## DISPOSITION

The trial court's judgment is reversed.  Hansen shall recover his costs on appeal.

ZELON, Acting P. J.

We concur:

SEGAL, J.

FEUER, J.

---

[8]  For purpose of this appeal, Newegg has conceded that if Hansen has standing to pursue his UCL and FAL claims, he also has standing to pursue his CLRA claim, which requires only that plaintiff claim to have suffered "'some form of damage.'"  (*Bower, supra*, 196 Cal.App.4th at p. 1556.)  Because we conclude Hansen has adequately alleged "economic injury" for purposes of UCL standing, we likewise conclude he has standing to pursue his CLRA claim.