FUENTES, Circuit Judge, dissenting.
Juries across the country have returned verdicts finding, among other things, that Johnson & Johnson is liable to consumers of Johnson's Baby Powder for its propensity to increase the risk of ovarian cancer in women.[1] This case is not about that. Mona Estrada, a longtime consumer of Johnson's Baby Powder, makes no claim that she *294 herself experienced a higher risk of ovarian cancer due to her use of the product. Instead, she alleges that Johnson & Johnson misrepresented what it sold her: a product, safe for daily use, that absorbs bodily moisture. She alleges that, had she known that the product was not safe, she would not have bought the product.
The majority is thorough and reaches a conclusion of law that, in the abstract, makes perfect sense: a plaintiff who receives the benefit of her bargain cannot assert that she has suffered an injury-in-fact to establish standing under Article III. I write separately because the majority omits key terms from the bargain struck between Estrada and Johnson & Johnson to reach the conclusion that Estrada received the benefit of her bargain. In my view, she did not. I would conclude from Estrada's pleadings that the safety of the product-as a general proposition, not specifically as to Estrada herself-was an essential component of the benefit of Estrada's bargain. Because Estrada alleges that the safety of the product was part of her bargain and that Johnson & Johnson misrepresented this key element, I would hold that Estrada has alleged injury-in-fact and standing under Article III. At this stage of the proceedings, all Estrada must allege is an "identifiable trifle" sufficient to establish injury-in-fact for standing under Article III.[2] She has done that. Thus, I would vacate the order of the District Court and remand this case for further proceedings.
I.
According to Estrada's pleadings, Johnson & Johnson has encouraged women to dust themselves daily with Johnson's Baby Powder through labeling and advertising. Estrada alleges that while the specific language of the label has changed over time, its message has remained consistent: "that the product is safe for use on women as well as babies."[3] Historically, the label and advertising has encouraged women to dust themselves with Johnson's Baby Powder daily to mask odors. Under a heading instructing customers when to use Johnson's Baby Powder specifically, the product says: "Use anytime you want skin to feel soft, fresh and comfortable. For baby, use after every bath and diaper change."[4]
Johnson & Johnson "seek[s] to convey an image as a safe and trusted family brand."[5] It operates a website specifically pronouncing "Our Safety & Care Commitment," in which it proclaims that "safety is our legacy" and "[y]ou have our commitment that every beauty and baby care product from the Johnson & Johnson Family of Consumer Companies is safe and effective when used as directed."[6] On its website advertising Johnson's Baby Powder, Johnson & Johnson states that the product is "[c]linically proven to be safe, gentle and mild."[7] None of the product's labeling or advertising advises of an increased risk of ovarian cancer associated with use of Johnson's Baby Powder.[8]
The majority does not dispute that Estrada alleges that Johnson & Johnson held the product out as safe. I agree. The majority states that "Estrada's references to *295 Baby Powder being unsafe as to others are not relevant to determining whether Estrada has standing herself ."[9]
I depart from the majority's reasoning that Johnson's Baby Powder must be unsafe "as to [Estrada]" in order for safety to be part of the benefit of Estrada's bargain.[10] In support of this proposition, it cites Lujan v. Defenders of Wildlife , which holds that "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."[11] The majority's application of Lujan to exclude "safety as to others" from Estrada's bargain misapplies Lujan and misapprehends the nature of Estrada's injury. Estrada's pleading makes it clear that Estrada does not allege that she is among those who have contracted or who have been exposed to an increased risk of contracting ovarian cancer due to her use of Johnson's Baby Powder. Estrada alleges that her injury was the economic harm caused by purchasing a product due to Johnson & Johnson's misrepresentations that the product was safe. She is, undisputedly, among the injured within the meaning of Lujan when it comes to the actual basis of her alleged injury-in-fact. I believe the Ninth Circuit succinctly stated the requirements of Article III as applied to economic harm when it wrote: "[W]hen, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so,' they have suffered an Article III injury in fact."[12]
II.
The majority contends that Estrada received the benefit of her bargain because it was safe "as to her."[13] This improperly confuses the benefit of the bargain relating to Estrada's alleged economic harm with the non-economic harm-the actual danger allegedly posed by Johnson's Baby Powder-which is not at issue in this case.
What makes a product safe? If I buy a car of a make and model that reportedly explodes when driven, it seems obvious that the car is not safe. But what if I know that the specific car that I have purchased, and any subsequent cars of that make and model that I purchase, will never explode while I am in the car? The car or cars that I purchase contain the same structural defect that makes those cars explode but I, through the powers granted to me by legal fiction, know they will never explode while I am in the car. Under the majority's reasoning, this means that the car is safe as to me and, therefore, I have conceded that it is safe in any legal action I take against the manufacturer for selling a car with an evident inclination to explode. After all, I am totally protected from the risk posed by the defect. But no one would describe the car as safe.
When we talk about a product being "safe," and when manufacturers and vendors hold a product out as "safe," we are talking about two related but distinct concepts. The first is exactly what the majority describes: safety as to the immediate purchaser. This is a common conception of safety, the consumer who considers the product and asks: "Is this going to hurt and/or kill me?" This form of safety undergirds *296 the claims that Johnson & Johnson misrepresented the safety of its product brought by plaintiffs who allege that they contracted or were exposed to an increased risk of contracting ovarian cancer. It is not at issue here.
But this is not the only form of safety. The second form of safety-the safety that was part of Estrada's bargain-concerns the safety of a product generally, or its safety as to others. The parent who buys a toy for a child considers the safety of the toy not necessarily as to him or her but as to the child. A man might buy Johnson's Baby Powder that will be used by a woman with whom he cohabitates, and might very well consider the safety of that product as to the other person, not to himself.[14] In other words, understanding this form of safety relies in part on recognizing that the purchaser of a product may not be the consumer of a product. The connection need not be that direct, however. A product is advertised as safe for the same reason it is advertised as effective: to induce people to purchase it. A person may rely on various representations made by a manufacturer or vendor when determining whether to make a purchase.
Kwikset Corp. v. Superior Court ,[15] a case decided by the Supreme Court of California, adjudicates standing in light of the very statute under which Estrada brings her claims. It is worth noting, though hardly dispositive, that the standing requirements of this law are "substantially narrower than federal standing under article III, section 2 of the United States Constitution."[16] The majority dismisses Estrada's citation of this case because it concerns plaintiffs who did not receive the benefit of their bargain (where, purportedly, Estrada has),[17] but Kwikset is relevant because it illustrates why Estrada did not receive the benefit of her bargain. In Kwikset , plaintiffs purchased locksets labeled "Made in U.S.A." that contained parts manufactured abroad. The defendant made an argument that is identical to the majority's reasoning here: "[C]onsumers who receive a fully functioning product have received the benefit of their bargain, even if the product label contains misrepresentations that may have been relied upon by a particular class of consumers."[18]
Perhaps illustrating the fundamental simplicity of the case before us, the Kwikset court disagreed, stating:
Plaintiffs selected Kwikset's locksets to purchase in part because they were "Made in U.S.A."; they would not have purchased them otherwise; and, it may be inferred, they value what they actually received less than either the money they parted with or working locksets that actually were made in the United States. They bargained for locksets that were made in the United States; they got ones that were not.[19]
The Kwikset court further reasons:
*297 The observant Jew who purchases food represented to be, but not in fact, kosher; the Muslim who purchases food represented to be, but not in fact, halal; the parent who purchases food for his or her child represented to be, but not in fact, organic, has in each instance not received the benefit of his or her bargain.[20]
Estrada has alleged that there was a misrepresentation made by Johnson & Johnson as to the safety of Johnson's Baby Powder and, moreover, that the misrepresentation was material to her decision to purchase Johnson's Baby Powder.
At least this stage of the proceedings, where we only endeavor to determine whether a plaintiff has standing to pursue her claim, I see no reason we should devote ourselves to understanding why a plaintiff values what she values. As Kwikset notes:
This economic harm-the loss of real dollars from a consumer's pocket-is the same whether or not a court might objectively view the products as functionally equivalent. A counterfeit Rolex might be proven to tell the time as accurately as a genuine Rolex and in other ways be functionally equivalent, but we do not doubt the consumer (as well as the company that was deprived of a sale) has been economically harmed by the substitution in a manner sufficient to create standing to sue. Two wines might to almost any palate taste indistinguishable-but to serious oenophiles, the difference between one year and the next, between grapes from one valley and another nearby, might be sufficient to carry with it real economic differences in how much they would pay. Nonkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless.[21]
I am persuaded by this rationale. The parent who purchases "organic" food that is not organic need not justify her decision to purchase food labeled "organic." The Kwikset plaintiffs were not obliged to explain why they cared if the locksets they purchased were manufactured in the United States. It was sufficient that the misrepresentation of the manufacturer deprived them of the benefit of their bargain such that they would not have purchased the product had the product been labeled accurately. As courts construing Kwikset have stated: "[A] consumer's subjective willingness to pay more for the product than he or she would have been willing to pay in the absence of the misrepresentation is itself a form of economic injury 'whether or not a court might objectively view the products as functionally equivalent.' "[22] That is the same scenario presented before us today.
Estrada effectively alleges that she values "safety" as a label, akin to "organic" or "Made in U.S.A." When contrasted with the real danger allegedly posed by Johnson's Baby Powder, this misrepresentation might seem petty. However, that does not make it immaterial to Estrada's bargain as she alleges it.
III.
The majority invokes two of our recent precedents to characterize Estrada's alleged injury as some attenuated, unknowable entity. The majority's invocation of Finkelman v. National Football League is misplaced.[23] Finkelman lacked standing *298 because the basis of his alleged injury-the purportedly inflated price of Super Bowl tickets-was only speculatively affected by the NFL's conduct.[24] Finkelman bought his tickets at the inflated price, but did not at that point allege a set of facts under which the NFL's conduct caused the price inflation.[25] Finkelman did not allege that he would not have bought the tickets at the inflated price or, more applicably, that he would not have bought the tickets had he known that the NFL withheld tickets in such a way that the price was inflated. Instead, Finkelman needed to establish with some particularity the chain of events that led to his economic injury because the injury itself-what money was actually lost-could not be established without that chain. The majority misapplies Cottrell v. Alcon Laboratories similarly, and to the same effect. In Cottrell , the plaintiffs did not dispute that they received the benefit of their bargain as to the portion of medicine that they were able to use from the dispensers at issue.[26]
The majority correctly notes that we did not analyze the economic theories presented in Finkelman and Cottrell "because we wished to sound pedantic."[27] We are obliged by Article III to ensure that plaintiffs allege injury in fact , not conjecture. In Finkelman , we needed to ascertain that a plaintiff who received the benefit of his bargain-tickets to the Super Bowl-was in fact injured by being compelled to pay more for his tickets because of the improper conduct of the seller. We needed to determine whether the pleadings established that said compulsion occurred. In Cottrell , we needed to ascertain an injury (and the measurability of that injury) where the plaintiffs undoubtedly received the benefit of their bargain as to some portion of the medicine that they consumed. More complex theories of injury may be necessary where a plaintiff gets the benefit of his or her bargain in some of the product, or where the injury might be obscured by layers of market forces.
That is not the case here. Estrada alleges that she paid for a product based, in part, on Johnson & Johnson's representation of its safety. That representation was part of the benefit of her bargain. Because that representation was false, Estrada did not receive the benefit of her bargain.
Unlike Finkelman , Estrada need not allege a chain of events to show that she paid a price she would not have otherwise paid for Johnson's Baby Powder. In my view, it suffices that she alleges that she would not have purchased the product. The price increase in her bargain with Johnson & Johnson caused by the company's alleged misrepresentation as to safety is the total sum she paid for the product.
Unlike the Cottrell plaintiffs, Estrada does not concede that she received the benefit of her bargain as to some of her purchase-that some of the product was safe as represented by Johnson & Johnson.[28] Estrada alleges that the whole product *299 fails to satisfy the representation of safety made by Johnson & Johnson. If Johnson & Johnson or Estrada can, by expert testimony, demonstrate that only a certain portion of Johnson's Baby Powder is unsafe, that is certainly a question of damages, not of injury-in-fact.
Moreover, the majority's logic is incompatible with Cottrell . After all, the Cottrell plaintiffs used all the medicine. Their bargain could be circumscribed just as the majority edits the terms of Estrada's bargain: the Cottrell plaintiffs bargained for the benefits of the medicine, not medicine delivered in a minimum effective dose so as to maximize the medicine's utility. But we wisely recognized in Cottrell that the benefit of the bargain encompasses the whole bargain, and that the bargain should not be redefined to neatly encompass only what plaintiffs actually received, instead of what they were promised.
IV.
The majority further holds that Estrada has failed to plead facts sufficient to establish standing to pursue restitution and to pursue injunctive relief. I disagree, largely for reasons already articulated.
With respect to restitution, the majority concludes that Estrada only makes conclusory allegations that Johnson & Johnson sold Johnson's Baby Powder for more money than it would have made had it disclosed the alleged risk of ovarian cancer. In this case, I would rely on the precedent of this Court that "federal courts typically credit allegations of injury that involve no more than application of basic economic logic."[29] Dealing only with the allegations of the pleadings, it seems sufficiently elementary that a product held out as safe will command a higher price than a product held out as markedly increasing a woman's risk of developing ovarian cancer. As such, I believe Estrada has alleged that Johnson & Johnson profited from its allegedly unlawful misrepresentation.
With respect to injunctive relief, I do not read Estrada's allegation as in fundamental tension with McNair v. Synapse Group Inc.[30] I read Estrada's allegations about desiring to purchase the product as inextricable from the bargain she struck with Johnson & Johnson. While the majority reads her pleadings to state that Estrada is willing to purchase the product as-is, given her allegations it makes more sense to understand that Estrada's pleaded desire to purchase baby powder in the future is contingent on Johnson & Johnson offering a product that meets the terms of her bargain. She is only unlikely to suffer future economic injury if we presume that Johnson & Johnson has lied and will continue to lie in its labeling, or that Estrada will assume that any label offered by Johnson & Johnson is untruthful.
Moreover, I believe plaintiffs alleging harm caused by defendants' misrepresentations are entitled to seek injunctive relief against those misrepresentations, in part because that is explicitly permitted under California's Unfair Competition Law under which Estrada sues.[31] A plaintiff who is sufficiently aware of misrepresentations and who alleges injury-in-fact under a theory of economic harm, or any theory of harm, is unlikely to continue purchasing that product as offered beforehand. If our reasoning compels us to interpret Article III to effectively strike down a provision of state law, and the law of a state not within this Circuit, I believe we have erred.
*300 V.
Article III standing is the minimum hurdle that a plaintiff must meet to bring her claim in federal court. To conclude here that Estrada has pleaded standing, we need not and, in fact, cannot determine whether she has stated a claim sufficiently to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We cannot address whether this claim as pleaded establishes a sufficient basis for class certification under Federal Rule of Civil Procedure 23. As previously stated, our only duty here is to determine whether Estrada alleged an "identifiable trifle" sufficient to establish injury-in-fact for standing under Article III.[32] Because Mona Estrada has met that bare minimum requirement, I respectfully dissent. I would vacate the District Court's order and remand for further proceedings.

See, e.g. , Tiffany Hsu, Johnson & Johnson Told to Pay $4.7 Billion in Baby Powder Lawsuit , N.Y. Times , July 12, 2018, https://www.nytimes.com/2018/07/12/business/johnson-johnson-talcum-powder.html; Tina Bellon, J&J hit with $21.7 million verdict in another talc asbestos cancer case , Reuters , May 23, 2018, https://www.reuters.com/article/us-johnson-johnson-cancer-lawsuit/jj-hit-with-21-7-million-verdict-in-another-talc-asbestos-cancer-case-idUSKCN1IO3HD.

Bowman v. Wilson , 672 F.2d 1145, 1151 (3d Cir. 1982) (quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP) , 412 U.S. 669, 686-90 & 689 n.14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) ).

AA050.

AA053.

Id.

Id. (alteration in original).

Id.

Id.

Majority Op. at 289 (emphasis in original).

Id. (emphasis omitted).

Lujan v. Defenders of Wildlife , 504 U.S. 555, 563, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Hinojos v. Kohl's Corp. , 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (quoting Mazza v. Am. Honda Motor Co. , 666 F.3d 581, 595 (9th Cir. 2012) ) (alteration in original).

Majority Op. at 289 (emphasis omitted).

The majority conflates safety as a representation with safety as insulation from risk to Estrada specifically, which perhaps is why it notes skeptically that men could join Estrada's proposed class. I leave aside that class certification is well beyond the scope of subject-matter jurisdiction. I also leave aside that the putative class action elements of this case are entirely separate from whether Estrada herself has standing to pursue her claim. Here, however, the majority again seems to forget that Estrada does not allege that she was exposed to the danger allegedly posed by Johnson's Baby Powder. She alleges that Johnson & Johnson's representations of safety were among the terms under which she purchased the product. This valuation of safety is not gender-exclusive.

51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).

Id., 120 Cal.Rptr.3d 741, 246 P.3d at 886.

Majority Op. at 290 n.14.

Kwikset , 120 Cal.Rptr.3d 741, 246 P.3d at 892.

Id.

Id.

Id., 120 Cal.Rptr.3d 741, 246 P.3d at 890.

Hansen v. Newegg.com Americas, Inc. , 25 Cal.App.5th 714, 236 Cal.Rptr.3d 61, 72 (2018) (quoting Kwikset , 120 Cal.Rptr.3d 741, 246 P.3d at 890 ).

See Majority Op. at 285-86.

Finkelman v. Nat'l Football League , 810 F.3d 187, 200 (3d Cir. 2016) (hereafter "Finkelman I ").

See id. ; cf. Finkelman v. Nat'l Football League , 877 F.3d 504, 512 (3d Cir. 2017) (holding that Finkelman's amended complaint, which alleged "a casual chain justifying why the NFL's withholding set into motion a series of events that ultimately raised prices on the secondary market," alleged Article III standing) (hereafter "Finkelman II ").

See Cottrell v. Alcon Labs. , 874 F.3d 154, 169-70 (3d Cir. 2017).

Majority Op. at 287.

Additionally, for this reason, the majority's assertion that Estrada's theory of standing would have entitled the Cottrell plaintiffs to sue for the contents of the entire bottle is wrong.

Finkelman , 810 F.3d at 201 (internal quotation marks and citation omitted).

672 F.3d 213 (3d Cir. 2012).

See Cal. Bus. & Prof. Code § 17204.

Bowman , 672 F.2d at 1151 (citation omitted).